If it pleases the Court, my name is Kyle Howard, Your Honors, and I represent the petitioner Pablo Magana Perez. Your Honors, I would like to start at the end that I believe that the agency's finding to deny cat relief in this case is not supported by substantial evidence, since the petitioner was a victim of past torture that was not in dispute. The agency erred in affirming the immigration judge's denial of cat relief by holding that the immigration judge's predictive findings of fact are not clearly erroneous. This agency's finding is not supported by the record of evidence. First, Your Honors, the persecutors were known, and not what the immigration judge stated in her decision of page 8, stating that they responded, does not know who harmed him. The testimonial evidence established that the persecutors were the government actors, or at minimum, government-sponsored actors who tortured. Can I ask you, so you state that as a conclusion, and I understand that's what your client thought, but what was the basis for that? I mean, I thought the basis was he thought he saw a badge that he interpreted to be a police badge. Is there more evidence that he gave that they were actually government-sponsored? There was no other indica on their persons to show that they were law enforcement other than the badge, but we're looking at a close proximity of time, 24 hours, of when the petitioner went to the police station to then having people come to his house, which he even stated his subjective belief was that these were individuals asking further questions of what he went to report the prior day. Now, did the agency state that Magana Perez's belief of political identity was based on temporal proximity? I'm sorry, I'm not following that. Well, the part of the reasoning was that Magana Perez's belief of political identity was based on temporal proximity, and your view is that that's not an accurate statement of what the record shows. Am I correct? Again, I'm not following that. I was discussing who the state actors are. Maybe I could try to ask it slightly differently. So didn't the agency consider the idea that the police had told whoever the attackers were that he had gone to the police? I don't believe the agency considered that because they stated in their decision that, well, yes, they did say after he reported to the police, but then they say that unidentified men abducted him. So I believe that's where the agency's error in that they're not, they did look at what happened within the next day, but I don't believe, but I believe they're using what the immigration judge is stating that there were unknown individuals. But so did he, is that wrong, though? I mean, it seems like the agency considered that they might have been coordinating with the police. I don't know if the petitioner ever said the names of the people such that it was like he actually could identify them. Do you think he did? The petitioner stated he didn't identify who these individuals were other than the badges they were wearing. So, counsel, help me understand, because we get these cases all the time. Your theory is very plausible, right? I mean, it's not, I understand why your client would think that this was a government action, but the IJ found otherwise, and we're obviously reviewing this for substantial evidence. So what is it that makes the IJ's findings here so implausible that we would need to step in and reverse that? Well, Your Honor, respectfully, I don't think that the IJ found otherwise. I don't think the IJ considered it or maybe had forgotten her decision. She did not discuss whether or not these individuals could be government actors or their proximity in time. She didn't even try or look to establish how this could possibly not be or could be government actors. Simply, she's stating, referring to the New Jersey Cartel and unknown individuals, and the fact is that she did not discuss if these could be government actors or who these people could be. Simply, she just stated they were unknown individuals. So the IJ's determination that your client, quote, provided the information to the gang members based on the proximity to when he was detained or abducted, in your view, is inaccurate because it omits the context of the badge. Correct, Your Honor. And is that largely the crux of your argument, that that is relevant evidence that was not considered? Yes, Your Honor. I think the fact that this was something that was not considered shows that this was, you know, again, overlooked in the testimonial evidence of my client. And simply assuming that these were the same individuals who are randomly extorting people, it did not, again, as I repeated, it did not address this close proximity in time and how it's a strong indication of who these people were. Again, it's, you know, how do these people know to come to him? Again, even the department in their private belief did state that the people don't want to stir up the hornet's nest by going and making claims to the police. And, you know, how did these attackers know that he went to the police to make these claims if they weren't either tipped off by a law enforcement officer there or these individuals doing the torture were themselves present while my client went and made that complaint the day before? But do you, I mean, it's C.A.R. 61. The I.J. stated that it was unclear who Perez's attackers were. Isn't that a factual finding? It is a, that's a finding, but it does not, it's not supported in the evidence because the evidence gave a strong, strong suggestion or presumption that these people were wearing a badge. And I'm going to push back a little bit on how you said that because I agree, well, I don't know if I agree with your assessment, but even your argument there that it gave a, his testimony gave a strong presumption, that's not enough for us to overturn it under substantial evidence. So even if the evidence were 80% or 90% indicative of this being government actors, if there's a 10% chance, I mean, I don't think we've ever said it, so I better be careful about my percentages, but even if there's just a little bit of evidence to support the I.J.'s finding, then we have to affirm it, and that's the problem I see with your argument. It seems like your better argument might be that he didn't consider all of the specific evidence, and that's what I'm trying to understand is what do you think he didn't consider? Because if you turn back to C.A.R. 57, the I.J. says, talking about Perez, he further testified that he believed the police provided the information to the gang members based on the proximity to where he was detained or abducted. So that does suggest that the I.J. considered your client's testimony. So what do you think the I.J. should have done more here? I respectfully would state that part of A.R. 57 is simply the I.J. going over her notes of the transcript of the actual testimony, and that's included in her transcript. Why wouldn't that next step be taken to actually discuss it in her decision of why there's not who the persecutors are? I think that whenever government action or acquiescence by government officials are presented in the evidence, the testimony, it's a very red flag. Can I interrupt you to ask, so I think your client did say he thought the attackers were from a gang. Is that right? He stated that when the attackers came to his house, they were wearing a badge, and he thought that they were. At first, at first he thought they were the police, but then later he says he thinks ultimately he thought they were from a gang. Correct. I think it's because he wouldn't assume that police officials will be hitting him and torturing him. OK, but he testified that he thought they were from a gang. So it's a little hard to say the I.J. was wrong to think that they could have been from a gang and not the actual police, I think. At least that's the first step. And then it seems like the I.J. did consider whether this gang was cooperating with the police, because that's this whole thing about closeness in time and how the I.J. did consider that they got the information from the police. So I'm just trying to figure out if the I.J. already considered this is a gang working with the police, what difference would the badge have made in that story? It seems like he already he or she, the I.J., is already considering a gang working with the police. Again, I would just push back that by stating what the his testimony was at the beginning and not including that statements in her decision. Again, we don't believe that she did consider that these. Well, she may not have. But what difference does it make if the badge only indicates that this is a gang working with the police? Well, I'm not sure what the badge indicates. You think the badge indicates that it actually was the police. But I think the petitioner testified that the petitioner thought it was a gang. Yes, I believe. I mean, I understand what you're saying. And, you know, again, there was unfortunately no other indicate besides a badge. And here, Mr. Magana's belief, it was that the police is only, again, based on his time and the badge. But again, there's nothing else under that. So I would agree that there's no other evidence that showed this was a police other than. You know, common sense of how these people would know to come and come on the next day. The the threat, the initial threat to these family was by giving their property away. And that's what they wanted. And, you know, if you why would they go to the next step of bringing him into torture for two days? Within a meal again, the phone call to the property, they didn't give them the opportunity. The attackers didn't give Mr. Magana the opportunity to deliver this land. They simply went to the next set of torturing him because he went to the police. And unless there's no obviously tracking him. But I think it's just a strong, you know, it's not just circumstantial evidence. It's it's a lot of I believe cooperating evidence that in this close time it shows it was a police. And I think the judge not, you know, analyzing that other than simply stating at the beginning of the facts of repeating the testimony. It's not an analyst of what she believes it. Her decision is riddled with statements that doesn't know what it was, doesn't doesn't try to go into further depth. That judge Nelson is stating there was should have been better done here. But I fact that, you know, if we with that next step, you are simply that that's why there's government involvement. But then, you know, relocation obviously not at issue. Again, going back to the badge question. The petitioner stated that the three men who had kidnapped him first showed him a badge. Correct? Yes, sir. And the agency did not mention the badge anywhere in its decision. Correct. So I just want to be clear again. And, you know, my colleagues have questioned you on this. You know, what is the significance of the badge? I would argue that this it's it's a it's a visual piece of evidence that symbolizes law enforcement. It is something that, you know, allows them to enter the petitioner's home. And it it it's. It's not something typical that you I'm sure your honors would hear of gang members wearing badges. I think it. So is that a visual? The evidence that is significant and the fact that it wasn't included, again, goes to my argument that this piece of evidence wasn't analyzed. It may have been stated at the beginning, but not analyzed. So why is this omission important enough to warrant remand in this case? Because it it goes back to the very beginning that the the predicate findings of the judge are not clearly erroneous. I think the fact that this omission would be an erroneous finding that overcomes the clearly erroneous standard. OK, let's hear from the government. We'll still give you a minute for rebuttal, even though we've taken you over your time. Thank you. And everyone hear me? Yes. Thank you, ma'am. May it please the court. Good morning. Scott Markanda, M.A.R.C.O.N.D.A. on behalf of Respondent, the attorney general of the United States. I'll begin by apologizing to the court because I drafted our answering brief. I think there's there's things that one just assumes are are obvious. And that's my error here. I probably did not highlight the utter lack of government involvement in this case. To start off with, there has never been a finding of past torture in this case. As the court notes, when the IJ was making her determination in that regard, it was that while the events here likely may rise to the level of torture required for that finding. And then she moves on to, because Kat is forward looking, the likelihood of future torture and whether one is trying to find past torture or future torture necessarily. There must, of course, be government involvement. And so when I was reading through the facts and I think these are all familiar to the panel, if I'm beating a dead horse, I apologize. So Petitioner hasn't been in country for several years, and he comes down and is in country for a matter of days for his father's funeral when his mother gets a call from an anonymous person threatening them with consequences they don't fend over the land. And Petitioner, as counsel said, goes to the police department. And as Judge Katzman pointed out, you've heard a lot of these cases. What you don't see here is when Petitioner gives that report, there's no pushback. There's no allegations of, oh, well, we can't help you. Go away. We don't like your kind or the gangs on it. They take the report and in his own statement at page 214 of the record, after 15 or 20 minutes, he's told he's free to go. And they don't take a photograph of him or anything like this. And so the next day, this is the temporal argument. The next day, Petitioner says he alone is outside the house by himself, outside. Now, the three men, he doesn't recognize. They didn't pull up in a squad car. They're not wearing police uniforms. There's no even mention of any weapons. And he says he saw, quote, some badge. Now, again, his credible statement is that, yes, Petitioner sincerely believes he saw some badge. In fact, we don't know what it was. It could have been a library card. It could have been counterfeit. It could have been stolen. But what's more interesting is that this interaction when the three individuals come up to Petitioner, there are no exchange of words whatsoever. No, hey, how are you doing here? Can I help you? And certainly no mention of having made a police report. And then Petitioner is taken. They get close enough to knock him on the head, blindfold him. There's no mention of any wrestling or tussle. Put him in a nondescript truck. But we don't know if it's open bed or closed. Take him to a nondescript building in a dark room. Sweat him for two days. There's no mention of it being a jailhouse or a police station. And at no point during that 24 hour, that 48 hours of interaction, is there any mention of a police report? Hey, you shouldn't have made a police report. Hey, tell your family, don't get the police involved in this. No more police reports. And then they release him with the sole fact, which is the motivation for the entire incident. Tell your family this is what's going to happen to them if they don't give us the land. It's the land, which is what the agency found. The motive here was furthering their criminal enterprise. They want money. And the fact that in the 10 intervening years, the family still has the land shows that the gang is smart enough to kind of like a bank. When I foreclose on a mortgage, I don't want to be in the real estate business. I'm in the money business. And apparently that revenue stream's been going on just fine. No mention of how it's being paid, how much it's paid, where it's paid. But in point of fact, what was different was that when they came to the land, guess who was outside? Petitioner. I'm not sure they even knew who he was, but he's on the right place. He's on the right place at the wrong time. And they grabbed him. Now, counsel, all of this was. Your description may be correct, but would you agree that. It is relevant evidence. In terms of the determination of cat relief, the relationship of the torturer's ties to the police, whether they had ties to the police. Isn't that yes, that's relevant. Yes. That is relevant. We don't find any ties here. I'm actually Judge Katzman. I wish I were. I'm sorry. I don't have my glasses on. I'm very sorry. I don't have my glasses on. And the screen is kind of small. I'm sorry. We actually need nameplates. So you agree that that is, you know, a key aspect of the determination here. The whether the whether the torturers had ties to the police. Yes, sir. Now, there is in the record through the testimony of the petitioner. Right. That he saw the people who assaulted him had a badge. Right. He said three men came and he saw, quote, some badge, unquote. Yes, sir. So, and again, I'm not saying that that that the analysis presented is necessarily persuasive or accurate. But isn't that relevant evidence? That is, the petitioner points to the people who assaulted him as wearing a badge or some badge. Right. Now, the there was no reference to the badge in the determination by the by the decision makers here. And isn't this classic jurisprudence that relevant evidence is evidence that needs to be considered in assessing whether a an adjudication is supported? Yes, Judge Katzmann. And I think we're perhaps in violence agreement because the IJ, of course, did consider petitioner's testimony when she found it credible and that there was the mention of the some badge she considered the temporal argument. But she also considered petitioner's other testimony and evidence where he says he has no idea who did this. He refers to them as narcos, as delinquents. And that's how the agency ultimately characterizes them when making their decision. These were gang members. And by labeling it that adopting petitioner's own characterization, that is the determination that there's no state tether here. Again, adherence to the state action requirement is partly to avoid imposing on states their agency and their officials responsibility for conduct, which they cannot fairly be blamed. Right. I'm not disagreeing with your legal principles. And I'm actually just engaged in a back and forth with you to further get a sense of the situation. Thank you, sir. Again, where there is a question as to whether there has been a connection to the state or to the police as relates to torture, isn't that relevant evidence that needs to be considered? Now, the decision maker may say, I considered that evidence. I don't think it's credible. There are flaws in that determination. But we don't have that here. We don't see that. And so why isn't remand appropriate for further development of the record? Well, I mean, the IJ did discuss the fact that petitioner stated there was a badge. And the fact that you said, well, what's to be made of that? Well, does that show some sort of state link? No, it was insufficient. It's really not even close. I mean, it's so tenuous. Again, it could be the source. It could be counterfeit. It could be stolen. It could be from Amazon. What they did with the IJ and the board both said was these were gangsters. We don't know if they're local. We don't know if they're tied to some large organization. But petitioner himself, again, has no idea who did this. But they can't be characterized as gangsters solely, as private actors, if there was the state nexus that you're rightfully concerned about. And in saying that it's gangsters and in saying there's no mention of police, that is the determination. Yes, we waited. And these people, they don't even exist anymore, by the way. There's this new generation, folks. And they haven't shown any interest in you in the last decade. And it's not clear they even know that you would be back in the country, forward-looking. And all of that is clear from the record. Could I ask you about your statement early in your argument that there was no torture in the past? Because on AR-61, the IJ says, despite having demonstrated that he suffered torture in the past, the respondent was unable to demonstrate on the record who tortured him. I've seen that. And I'm sure that, and good point, Judge Freeland. The IJ does go a little sing-songy back and forth. At one point, he also says that there was past torture. But putting aside the lack of enumerated ground, and he goes into the well-founded fear analysis here. There wasn't a finding of past torture where all he was referring, or she was referring to was that given the facts and what happened to this petitioner, that could likely rise to the level. But you cannot possibly find a finding of torture without a finding of state action in it. There's clearly no finding. I don't think that's right. You can have not a cat claim, but you can have torture. And the IJ says there was torture in the past. So I think you're mischaracterizing this. I don't understand what you're saying. Thanks for that clarification. Because, yes, there's criminal conduct, there's torture. Torture, for purposes of protection under the Convention Against Torture, has a state action component. A person can be grievously tortured. Absolutely. Yes, ma'am. But not qualify for cat because it was the Sopranos. And I apologize if that wasn't clear. I have nothing further unless the court has further questions for me. Okay. Thank you, counsel. Let's give your opposing counsel a minute for a rebuttal, please. Thank you, Your Honors. I think going to whether the judge consider government involvement here, if you look at her decision on AR-61, she states because the respondent doesn't know who harmed him in 2009, there's little evidence in the record to show the respondent could relocate to a different part and then later, without an understanding of whether the individuals are part of a larger cartel or local gang. At no mention does she even mention any police involvement here. Her decision is solely, in the context of her decision, is about that the respondent doesn't know who harmed him. As Judge Caspin highlighted, it is relevant that he's raising that he believes that these individuals would have government ties or are the police themselves. That should have been put in her decision. And so had she considered that, Your Honors, I believe she would have compared and contrast that. She stated there's little evidence in the record to show that he cannot relocate. Well, if there's an argument of government involvement, then relocation is presumed as a safe place to relocate. So if you look at her actual decision, at no time does she compare and contrast whether or not there's government involvement here, and I think that's extremely relevant to show that she considered it. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: FRIEDLAND, NELSON, Katzmann